ABRAMSON & DENENBERG, P.C.
BY: ALAN E. DENENBERG, ESQUIRE
IDENTIFICATION NUMBER: 54161           **ATTORNEY FOR PLAINTIFF**
1315 WALNUT STREET, SUITE 500
PHILADELPHIA, PA 19107
215-546-1345

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JANICE TANGRADI
11846 BASILE RD.
PHILADELPHIA, PA 19154                    :  CIVIL ACTION
      Plaintiff                             :

v.                                        :

CITY/COUNTY OF PHILADELPHIA               :  NO.
1515 ARCH STREET, 14TH FLOOR
PHILADELPHIA, PA 19102                    :
      AND                                 :
CITY COMMISSIONER LISA M. DEELY
1515 ARCH STREET, 14TH FLOOR              :
PHILADELPHIA, PA 19102
      AND                                 :
CITY COMMISSIONER AL SCHMIDT
1515 ARCH STREET, 14TH FLOOR              :
PHILADELPHIA, PA 19102
      AND                                 :
CITY COMMISSIONER ANTHONY CLARK           :
1515 ARCH STREET, 14TH FLOOR
PHILADELPHIA, PA 19102                    :
      AND                                 :
CITY COMMISION EMPLOYEE JANE DOE          :
1515 ARCH STREET, 14TH FLOOR
PHILADELPHIA, PA 19102                    :
      AND                                 :
DANAHER CORPORATION
2200 PENNSYLVANIA AVENUE                  :
NW SUITE 800W
WASHINGTON, D.C. 20037                    :
      AND                                 :
TOTAL CONTROL INC.
62 RITTENHOUSE CIR.
NEWTOWN, PA 18940-3915

|  |  |
|---|---|
| AND<br>**ABC CORPORATION**<br>              **Defendants** | :<br>:<br>:<br>: |

## COMPLAINT

1. Plaintiff, Janice Tangradi (hereinafter "Plaintiff" or "Tangradi"), is an adult resident of the Commonwealth of Pennsylvania, residing as captioned.

2. At all times material hereto, Tangradi was an elected committee person for the City of Philadelphia, representing Ward 66B.

3. As an elected committee person, Tangradi received no taxpayer-funded compensation, and was responsible, among other duties, for monitoring the polling places in her Ward on election day.

4. Defendant, City/County of Philadelphia, is a municipal corporation organized and existing under the laws of the Commonwealth of Pennsylvania, which maintains its principal offices as captioned.

5. At all times material hereto, Defendant, City/County of Philadelphia, was charged pursuant to Pennsylvania law with the responsibility of maintaining an Election Board, which oversees voter registration and conducts elections in the City/County of Philadelphia.

6. The Election Board is comprised of three City Commissioners, who are elected every four years by the voters of Philadelphia.

7. At all times material hereto, the City Commissioners responsible for overseeing the 2019 election were Defendants City Commissioner Lisa M. Deely (hereinafter "Commissioner Deely"), City Commissioner Al Schmidt (hereinafter "Commissioner Schmidt"), and City Commissioner Anthony Clark (hereinafter "Commissioner Clark").

8. Defendants, Commissioners Deely, Schmidt, and Clark were at all times material hereto acting under color of state law, pursuant to their authority as City/County of Philadelphia Commissioners, with the responsibility of overseeing, training, and controlling the Commission/Election Board employees, including Defendant Commission employee Jane Doe.

9. Defendants, Commissioners Deely, Schmidt, and Clark are being sued in their official capacities as persons with final decision-making authority over the polices, practices and customs of all aspects of the Philadelphia electoral process, including the selection and maintenance of voting machines, and the conduct of its employees.

10. Defendant, Commission employee Jane Doe, was at all times material hereto acting in the course and scope of her employment, pursuant to the customs, practices and policies of the Commission/Election Board, under the color of state law, and is being sued in her individual capacity.

11. Defendant, Danaher Corporation, is a Delaware Corporation, with its principal place of business as captioned above, and is engaged in the business of designing, manufacturing, and selling voting machines, including the Danaher Shouptronic 1242, which was used by Defendant City/County of Philadelphia in the 2019 election, and which voting machine caused injury to the Plaintiff.

12. Defendant, Total Control Inc. is a Delaware Corporation, with its principal place of business as captioned above, and is a seller/distributor/manufacturer's representative of the Danaher Shouptronic 1242 voting machine, and it is believed and therefore averred that Total Control Inc. sold the voting machine to the City/County of Philadelphia that caused the injury to the Plaintiff.

13. Defendant ABC Corporation is an unknown corporate/business entity, which designed, manufactured and/or sold the Danaher Shouptronic 1242 to the City/County of Philadelphia.

14. This court has jurisdiction over the Federal law claims pursuant to 28 U.S.C. § 1331, and jurisdiction over the Pennsylvania state law claims pursuant to the principals of pendant and ancillary jurisdiction.

15. Venue is proper under 28 U.S.C. § 1391(b) because the causes of action upon which the complaint is based arose in the City/County of Philadelphia, which is in the Eastern District of Pennsylvania.

16. On May 21, 2019, pursuant to her duties as a committee person, Tangradi was a poll watcher at the polling center for Ward 66B, which was located at the Palmer Playground, 3305 Comly Road, Philadelphia, PA 19154.

17. At approximately 10:21 am, Tangradi was notified by one of the poll workers that voting machine #1, a Danaher Shouptronic 1242 designed/manufactured/sold by Defendant Danaher Corporation and/or Total Control Inc. and/or ABC Corporation, was not working.

18. Tangradi immediately called the City Commissioners office and requested that a technician be sent to repair voting machine # 1.

19. Defendant, City/County of Philadelphia, by and through Defendant Commissioners Deely, Schmidt, and Clark, never provided Tangradi with any training on the repair or maintenance of the Danaher Shouptronic 1242 voting machine, and did not have any polices/directives/procedures regarding the repair and maintenance of said voting machines.

20. Despite having no training on the repair and maintenance of the Danaher voting machine, and despite the fact that Defendant City/County of Philadelphia had no

policies/directives/procedures regarding the repair/maintenance of the Danaher voting machine, when Tangradi called the City Commissioners office, Defendant City Commission employee Jane Doe instructed the Plaintiff to attempt to fix the machine herself.

21. Specifically, while Plaintiff maintained phone contact, Defendant City Commission employee Jane Doe instructed/directed the Plaintiff to check certain things in the front of machine, and push certain buttons.

22. When this did not work, and Plaintiff informed Defendant City Commission employee Jane Doe that the lights on the voting machine were not working, Defendant Jane Doe instructed/directed Tangradi to go to the back of the voting machine and make sure it was plugged in, which it was.

23. The Danaher Shouptronic 1242 voting machine comes as a unit, and is designed to fold up for transportation and/or storage. Exhibit "A", Picture.

24. At the rear of voting machine is an approximately 3' by 3' box, approximately 8" deep, the front of which houses that actual voting machine. Exhibit "A", Picture.

25. There were no warnings on the box or anywhere on the voting machine prohibiting persons from stepping inside the box area or warning of the dangers of stepping inside the box area.

26. After Tangardi informed Defendant City Commission employee Jane Doe that the machine was plugged in, Defendant Jane Doe affirmatively ordered/directed Plaintiff to read her information on a label that was located on the rear of the voting machine.

27. The print on the label was very small, and because of the way Defendant Danaher Corporation and/or Total Control Inc. and/or ABC Corporation designed the voting machine, to read the label the Plaintiff had to step inside of the box.

28. Tangradi stepped into the box with her right foot first, and then her left foot, which immediately became stuck in the left corner of the box.

29. As Tangradi attempted to dislodge her left foot, she lost her balance, and because there was nothing to grab on to, fell to the ground, causing sever injuries that are described in more detail below.

30. The injuries that the Plaintiff suffered from stepping into the box and falling down were foreseeable and fairly direct because the box was not designed to have persons stepping inside of it and it posed a hazard or risk of injury.

31. Defendant City Commission employee Jane Doe's affirmative order to the Plaintiff to attempt to fix the voting machine, and her order to provide information from the label in the rear of machine, which required the Plaintiff to step into the box, were reckless and deliberately indifferent to Tangradi's safety and well-being, and shocks the conscience.

32. A relationship existed between Defendant City Commission employee Jane Doe, who was employed by the Philadelphia City Commission, which was responsible for all aspects of voting, including the maintenance and repair of the voting machines, and the Plaintiff, who as the Ward 66B committee person was responsible for monitoring the polling place, such that the Plaintiff was a foreseeable victim of Jane Doe's command to fix the voting machine and read her the information off the label.

33. Defendant City Commission employee Jane Doe affirmatively used her authority to create a danger or make the Plaintiff more vulnerable to danger when she ordered the Plaintiff, who had no training in the maintenance and repair of voting machines, to attempt to fix the voting machine, and ordered her to provide information from a label that required the Plaintiff to step inside the box, exposing her to the danger that resulted in her injury.

34. Defendant Danaher Corporation's and/or Total Control Inc. and/or ABC Corporation's design of the voting machine was defective in that it required persons to step into the box at the rear of the machine to obtain vital information necessary for the repair of the machine and also required persons to step into the box for the repair of the machine, when the box in rear of the machine was not designed for persons to step inside, and posed an unreasonably dangerous condition to persons who did.

35. Defendant Danaher Corporation and/or Total Control Inc. and/or ABC Corporation failed to warn Plaintiff, or any other person using or attempting to fix the voting machine, that the box at the rear of the machine was not designed to be stepped into, and posed a danger or risk of harm to persons who did.

36. As the seller/distributor of the Danaher Shouptronic 1242, Defendant Total Control Inc. and/or ABC Corporation was engaged in the business of selling the Danaher voting machine and owed a duty of care to the consumer, including the Plaintiff, which duty of care required Defendant Total Control Inc. and/or ABC Corporation not to sell the machine in a defective condition that was unreasonably dangerous.

37. As the designer/manufacturer/seller of the Danaher Shouptronic 1242, Defendant Danaher Corporation and/or ABC Corporation owed a duty of care to the consumer, including the Plaintiff, which duty of care required Defendant Danaher Corporation and/or ABC Corporation not to sell the machine in a defective condition that was unreasonably dangerous.

38. Defendants Danaher Corporation and/or Total Control Inc. and/or ABC Corporation designed/manufactured/sold the Danaher Shouptronic 1242 to Defendant City/County of Philadelphia in a defective and dangerous condition, that resulted in injury to the Plaintiff.

39. The Plaintiff was a foreseeable victim of the defective, dangerously designed and manufactured Danaher Shouptronic 1242, and all Defendants failed to warn her of the dangers of stepping inside the box located at the rear of the voting machine.

40. As the direct and proximate result of all Defendants acts and omissions, the Plaintiff suffered serious injuries, including a severely broken left arm, requiring surgery and the insertion of a plate and seven screws, two torn rotator cuffs, and ongoing care, treatment and physical therapy.

41. As the direct and proximate result of all Defendants acts and omissions, the Plaintiff has incurred the following medical expenses to date:

Philadelphia EMS
5/21/19
$970.00

Aria Health
5/21/19 – 5/25/19
$3,927.23
$770.00

Rothman
5/22/19
$290.00

HRC Medical Associates
5/23/19
$108.00

Comprehensive Cardiology
5/24/19
$193.00

Rothman Orthopedics & Specialty Hospital
5/22/19 – 8/21/19
$77,776.65

United Anesthesia Services
5/28/19
$2,240.00

Jeff Assoc (part of Rothman)
6/25/19
$431.00

7/30/19
$431.00

HRC Medical Associates
6/6/19

$126.00

Nova Care
7/12/19 - 12/31/19

$7,988.00

HRC Medical Associates
7/10/19 & 8/13/19

$108.00
$156.00

Philadelphia Hand to Shoulder Center
8/26/19 – 2/5/20

$6,934.00

Jefferson Health
9/16/19

$21,426.51

    Methodist Anesthesia

$1.080.00

    Jeff Pathology

$45.00

HRC Medical Associates
9/19/19

$138.00

3B Orthopedics Jefferson
9/25/19 – 11/12/20

$2,545.00

Jefferson Health Professional Court
MRI Lumbar & Cervical
10/9/19

$3,219.68

    Jeff Assoc

$431.00
$431.00

Jefferson Health
Pain Management
10/30/19

$445.00

Aria
11/11/19

    Aria Physicians      $8,497.22

    $490.00
    $930.00

HRC Medical Associates
11/21/19

    $156.00

Aria
12/2/19

    Aria Physicians      $8,347.22

    $490.00
    $680.00

Jefferson Neurosurgery
12/17/19 & 2/13/20

    $375.00
    $185.00

Aria
12/19/19

    Aria Physicians      $8,392.72

    $680.00
    $490.00

Jefferson Health
Xray & CT Cervical Spine
12/26/19

    $248.00
    $64.00
    $560.00
    $2,242.00

HRC Medical Associates
1/28/20

    $185.00

Cornerstone Physical Therapy
3/2/20 – 3/4/20

    $442.00

Jefferson Bucks Campus
X-Ray & MRI Lumbar
5/20/20

$431.00
$1,893.88
$45.00

Cape Regional Medical Center
7/3/20

$1,890.00
$321.00

HRC Medical Associates
7/9/20

$108.00

Rheumatic Disease Assoc
7/21/20

$372.00

Cape Regional Medical Center
7/24/20

North American Spine & Pain
7/27/20 – 9/15/20

$9,500.00
$28,650.01
$9,500.00
$28,650.01

Rheumatology Specialty Center
9/11/20 & 11/9/20

Functional Evaluation
9/23/20

$655.00

Jefferson Health Torresdale Campus
Bone Density Test
10/7/20

Jefferson Health Pavilion
MRI Cervical
10/21/20

$1,609.84
$431.00

Aria
11/25/20

$1,609.84
$431.00

Aria Health
12/7/20 – 12/9/20

$77,325.97
$1,960.00
$17,590.00
$150.00
+_____

**$349,542.78**

42. As the direct and proximate result of all Defendants acts and omissions, the Plaintiff lost her job.

43. As the direct and proximate result of all Defendants acts and omissions, the Plaintiff the Plaintiff suffered humiliation, loss of enjoyment of life, mental anguish and emotional distress and may continue to suffer same for an indefinite time into the future.

### COUNT I
### 42 U.S.C. § 1983-- STATE CREATED DANGER (SUBSTANTIVE DUE PROCESS)
### PLAINTIFF v. COMMISSION EMPLOYEE JANE DOE

44. Plaintiff incorporates by reference the preceding paragraphs as if fully set-forth herein.

45. Defendant City Commission employee Jane Doe acted with reckless disregard and deliberate indifference to the Plaintiff's safety when she ordered her to attempt to fix the voting machine, knowing that she had no training, knowledge or experience regarding fixing the voting machine, and when she ordered her to read the information off of the rear of the machine,

which required the Plaintiff to step into the box, when she knew or should have known that the box was not designed to be stepped into, and posed a dangerous condition and risk of harm to persons who did.

46. Due to her position as a Ward 66B committee person, the Plaintiff was a foreseeable victim, and the harm the Plaintiff suffered was foreseeable and fairly direct because the box was not designed to have persons stepping inside of it and it posed a hazard.

47. Defendant City Commission employee Jane Doe affirmatively created or increased the risk of harm to the Plaintiff when she ordered her to provide information off of a label on the rear of the voting machine that could only be accessed by stepping into the box, when the box was not meant to be stepped into and posed a danger and risk of harm to persons who did in violation of the Plaintiff's right to liberty and bodily integrity under the Due Process Clause of the Fourteenth Amendment.

**WHEREFORE**, Plaintiff demands compensatory damages against Defendant in an amount in excess of One Hundred Seventy Five Thousand Dollars ($175,000.00) plus interest, costs, attorney's fees and delay damages.

### COUNT II
### 42 U.S.C. § 1983—*MONELL* CLAIM
### PLAINTIFF v CITY/COUNTY OF PHILADELPHIA, COMMISSIONERS DEELY, SCHMIDT AND CLARK

48. Plaintiff incorporates by reference the preceding paragraphs as if fully set-forth herein.

49. Defendant, City/County of Philadelphia, by and through City Commissioners Deely, Schmidt and Clark, who have final decision-making authority regarding all policies, practices, customs, procedures and training related to voting in the City/County of Philadelphia, condoned and/or acquiesced in the unconstitutional practice/custom of its employees, and in

particular of Defendant Commission Employee Jane Doe, regarding ordering untrained/unqualified poll workers to fix broken voting machines, which unconstitutional custom, practice and/or policy was the direct and proximate cause of injury to the Plaintiff.

50. Defendant, City/County of Philadelphia, by and through City Commissioners Deely, Schmidt and Clark, who have final decision-making authority regarding all policies, practices, customs, procedures and training related to voting in the City/County of Philadelphia, failed to have any policies related to the fixing of voting machines, and the fixing of voting machines by persons not qualified to do so, or the training of persons who might be responsible for fixing voting machines when the need for such polices was obvious, and failure to have them was the direct and proximate cause of the Plaintiff's injuries.

51. Defendant, City/County of Philadelphia and/or Commissioners Deely, Schmidt and Clark were deliberately indifferent to the Plaintiff's right to liberty and bodily integrity in violation of the Due Process Clause of the Fourteenth Amendment.

**WHEREFORE,** Plaintiff demands compensatory damages against the City/County of Philadelphia and/or Commissioners Deely, Schmidt and Clark in an amount in excess of One Hundred Seventy Five Thousand Dollars ($175,000.00) plus interest, costs, attorney's fees and delay damages.

<u>**COUNT III**</u>
<u>**STRICT LIABILITY**</u>
<u>**PLAINTIFF v. DANAHER CORPORATION AND/OR TOTAL CONTROL INC.**
**AND/OR ABC CORPORATION**</u>

52. Plaintiff incorporates by reference the preceding paragraphs as if fully set-forth herein.

53. At all times material hereto, Defendant Danaher Corporation and/or Total Control Inc. and/or ABC Corporation engaged in the business of designing, manufacturing, promoting, suppling and selling Danaher Shouptronic 1242 voting machines.

54. At all times material hereto, Defendant Danaher Corporation and/or Total Control Inc. and/or ABC Corporation designed, manufactured and sold to City of Philadelphia the Danaher Shouptronic 1242 voting machine that was used at the polling center for Ward 66B, which was located at the Palmer Playground, 3305 Comly Road, Philadelphia, PA  19154, and which was referred to as voting machine #1.

55. The Danaher Shouptronic 1242 voting machine designed, manufactured and sold to the City of Philadelphia Defendant Danaher Corporation and/or Total Control Inc. and/or ABC Corporation, and used at the Ward 66B polling place was in a defective condition that was unreasonably dangerous to the user and persons who fixed the machine in that there was no access to important instructions and labels located in the rear of the machine without stepping into a box that was not designed to be stepped into and posed a danger and risk of injury to persons who did.

56. The Danaher Shouptronic 1242 voting machine designed, manufactured and sold to the City of Philadelphia by Defendant Danaher Corporation and/or Total Control Inc. and/or ABC Corporation, and used at the Ward 66B polling place was in a defective condition that was unreasonably dangerous to the user and persons who fixed the machine in that there was no warning that the box was not designed to be stepped into and posed a danger and risk of injury to any persons that did.

57. Defendant Danaher Corporation and/or Total Control Inc. and/or ABC Corporation, in the exercise of reasonable care, knew or should have known that persons using,

maintaining, and fixing the Danaher Shouptronic 1242 voting machine would rely upon the voting machine be safe, and as the manufacturer, designer and seller of the voting machine are strictly liable under Restatement (Second) of Torts § 402A for designing, manufacturing, and selling the voting machine with a defective/unreasonably dangerous design, and for designing, manufacturing, selling the voting machine without providing adequate warnings about the dangers of stepping into the box.

58. Defendant Danaher Corporation's and/or Total Control Inc. and/or ABC Corporation's defective/unreasonably dangerous design and failure to warn were the direct and proximate cause of the injuries to the Plaintiff detailed above.

**WHEREFORE,** Plaintiff demands compensatory damages against Defendant Danaher Corporation and/or Total Control Inc. and/or ABC Corporation in an amount in excess of One Hundred Seventy Five Thousand Dollars ($175,000.00) plus interest, costs, attorney's fees and delay damages.

### COUNT IV
### NEGLIGENCE
### PLAINTIFF v. DANAHER CORPORATION AND/OR TOTAL CONTROL INC. AND/OR ABC CORPORATION

59. Plaintiff incorporates by reference the preceding paragraphs as if fully set-forth herein.

60. At all times material hereto, Defendant Danaher Corporation and/or Total Control Inc. and/or ABC Corporation negligently, carelessly, recklessly and/or intentionally designed, manufactured and sold the Danaher Shouptronic 1242 voting machine in a defective and dangerous condition that was the direct and proximate cause of injury to the Plaintiff.

61. Specifically, Defendant Danaher Corporation and/or Total Control Inc. and/or ABC Corporation negligently, carelessly, recklessly and/or intentionally designed the Danaher

Shouptronic 1242 voting machine so that the only way to access certain information and to fix certain problems with the machine was to step into a box at the rear of the machine that was not designed to be stepped into and posed an unreasonable danger and risk of harm.

62. Defendant Danaher Corporation and/or Total Control Inc. and/or ABC Corporation negligently, carelessly, recklessly and/or intentionally failed to warn users of the Danaher Shouptronic 1242 voting machine, and/or persons who were required to fix the machine, that the box at the rear was not designed to stepped into, and that stepping into the box posed an unreasonable danger and risk of harm.

63. As the direct and proximate result of Danaher Corporation and/or Total Control Inc. and/or ABC Corporation negligence/carelessness/recklessness the Plaintiff suffered the injuries detailed above.

**WHEREFORE,** Plaintiff demands compensatory damages against Defendant Danaher Corporation and/or Total Control Inc. and/or ABC Corporation in an amount in excess of One Hundred Seventy Five Thousand Dollars ($175,000.00) plus interest, costs, attorney's fees and delay damages.

RESPECTFULLY SUBMITTED.

BY: _____
ALAN DENENBERG, ESQUIRE

